**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 23-1746
_____


CAMP HILL BOROUGH REPUBLICAN ASSOCIATION;
CAROLINE MACHIRAJU; KATHERINE PEARSON

v.

BOROUGH OF CAMP HILL; ALISSA PACKER, in her
official capacity as President, Borough Council, Borough of
Camp Hill; SARA GIBSON; COLTON WEICHMAN, in his
official capacity as Codes Enforcement Officer, Borough of
Camp Hill,

                                Appellants
_____

On Appeal from the United States District Court
for the Middle District of Pennsylvania
(D.C. No. 1:22-cv-01679)
District Judge: Honorable Jennifer P. Wilson
_____

Argued: January 17, 2024

Before: JORDAN, BIBAS, and AMBRO, *Circuit Judges*

(Filed: May 9, 2024)

Elizabeth L. Kramer
Edward L. Stinnett, II
Isaac P. Wakefield          [ARGUED]
SALZMANN HUGHES
1801 Market Street, Suite 300
Camp Hill, PA 17011
    *Counsel for Appellants*

Brian C. Caffrey
Marc A. Scaringi          [ARGUED]
Jeffrey R. Schott
SCARINGI & SCARINGI
2000 Linglestown Road, Suite 106
Harrisburg, PA 17110
    *Counsel for Appellees*

_____

OPINION OF THE COURT
_____

BIBAS, *Circuit Judge*.

Rarely may the government limit speech based on its content. The Borough of Camp Hill passed an ordinance to keep residents from cluttering their lawns with signs. That ordinance defines about twenty categories of signs and applies different limits to each. But it classifies some signs based on their content. That classification is a red flag. Because parts of the ordinance are not narrowly tailored to further a compelling government interest, they are unconstitutional on their face. So we will affirm the District Court's summary judgment for the challengers.

# I. The Sign Ordinance

Before the 2022 midterm elections, two Camp Hill residents put signs on their lawns to support a host of political candidates. Katherine Pearson put up two signs about a hundred days before the election. Weeks later, Caroline Machiraju put up three signs. But Camp Hill told them both to take their signs down because they violated a local sign ordinance.

The ordinance applies different rules to different sign categories. Pearson's and Machiraju's signs were Temporary Signs. Within that category, their signs were also Personal Expression Signs: signs that "express[ ] an opinion, interest, position, or other non-commercial message." App. 52. The ordinance limits how many Personal Expression Signs a resident may put up (two) and when they may go up (starting only sixty days before the election or other event). Machiraju had too many signs, and Pearson had put hers up too early. Each complied with Camp Hill's demands and took her signs down.

Then they sued Camp Hill, challenging those provisions under the First Amendment both facially and as applied. The District Court granted them summary judgment on their facial challenge. It reasoned that the Temporary Sign and Personal Expression Sign provisions were content based and failed strict scrutiny.

Camp Hill now appeals. We review de novo a district court's grant of summary judgment. *Tundo v. County of Passaic*, 923 F.3d 283, 286 (3d Cir. 2019). To win on a facial free-speech challenge, Pearson and Machiraju must "establish that no set of circumstances exists under which the [ordinance] would be valid, or, in the First Amendment context, show that

3

the law is overbroad because a substantial number of its applications are unconstitutional" relative to its constitutional applications. *Mazo v. N.J. Sec'y of State*, 54 F.4th 124, 134 (3d Cir. 2022) (internal quotation marks omitted).

## II. THE CHALLENGED PROVISIONS ARE CONTENT BASED

The First Amendment presumptively prevents the government from restricting speech based on its content. *Free Speech Coal., Inc. v. Att'y Gen.*, 974 F.3d 408, 420 (3d Cir. 2020). By limiting lawn signs, Camp Hill's ordinance restricts speech. The Borough argues that it limits not *what* a resident can say, but *how* she can say it, making it a "time, place, or manner restriction." Appellants' Br. 13. The government has more leeway to enforce such limits. *Ward v. Rock Against Racism*, 491 U.S. 781, 798–99 (1989).

But this ordinance does not qualify. Camp Hill mistakes an ordinance that restricts when, where, and how someone can speak for a time-place-or-manner restriction. But the latter is a term of art. And an ordinance that asks what a person said and why does not fit. In other words, a time-place-or-manner restriction must be content neutral. *Id.* at 791–92. This law is not. In two different ways, it restricts some signs based on their content. First, it defines Personal Expression Signs by separating commercial from noncommercial speech. Second, by carving out Holiday Decorations, it makes the remaining Temporary Sign category a content-based catchall. Because the ordinance is content based, it cannot be a mere time-place-or-manner restriction. So it survives only if it can satisfy strict scrutiny. *See Reed v. Town of Gilbert*, 576 U.S. 155, 163–64 (2015).

4

### A. The ordinance treats noncommercial messages worse

The ordinance limits the size, height, timing, and illumination of Personal Expression Signs more strictly than it limits other Temporary Signs. And those harsher rules apply because Personal Expression Signs express noncommercial messages. Categorizing speech as noncommercial is categorizing it by content. By favoring commercial expression over noncommercial, the ordinance targets speech based on its message. So it is not content neutral. *Id.* at 163.

To tell if a category is based on the sign's content, we ask how an ordinary reader would know what category a sign belongs in. If he can do so by judging the sign's content-neutral features, like its size or location, the category is content neutral. *See City of Austin v. Reagan Nat'l Advert. of Austin, LLC*, 596 U.S. 61, 71 (2022). But if he must consider its subject matter, the category is content based. *Reed*, 576 U.S. at 169–71.

This inquiry follows three steps. First, we identify the regulated category and a comparable category that is treated differently. *See id.* at 164. In *City of Austin*, for example, the Court compared signs advertising off-premises businesses (the regulated category) to on-premises signs. 596 U.S. at 66. Here, the regulated category is Personal Expression Signs. Camp Hill admits that the only distinction between Personal Expression Signs and other Temporary Signs is their "commercial versus noncommercial" content. Appellants' Br. 29. So commercial Temporary Signs is the right category for comparison.

Second, we discern what feature distinguishes the regulated category from the comparable category. In *City of Austin*, the defining feature was the sign's location. 596 U.S. at 71. But

here, the defining feature is the sign's noncommercial message. A Personal Expression Sign is any sign "that expresses an opinion, interest, position, or other non-commercial message." App. 52. The final term colors the first three. So the category reaches *noncommercial* opinions, interests, positions, and other content. Collectively, these terms cover all non-commercial messages. Thus, "the very basis" for Personal Expression Signs "is the difference in content between ordinary [signs] and commercial speech." *City of Cincinnati v. Discovery Network, Inc.*, 507 U.S. 410, 429 (1993).

Finally, we decide whether that feature is the sign's topic, viewpoint, or subject matter. *See Reed*, 576 U.S. at 164. To identify whether a sign is on premises, "[t]he message on the sign matters only to the extent that it informs the sign's relative location." *City of Austin*, 596 U.S. at 71. Because that was true of the regulation in *City of Austin*, it was content neutral.

But Camp Hill's sign ordinance is not. It distinguishes commercial from noncommercial speech. Yet to tell if speech is commercial, we ask, for instance, if it advertises a product, uses that product's name, and furthers the speaker's economic goals. *Bolger v. Youngs Drug Prods. Corp.*, 463 U.S. 60, 66–67 (1983). Each of these inquiries requires judging the speech's content. And because categorizing a sign as non-commercial requires a content-based judgment, the Personal Expression category cannot be a time-place-or-manner restriction.

What is more, the category treats noncommercial speech worse than commercial speech. Under the plain text of the ordinance, commercial signs may be put up for thirty days,

6

taken down, and then put up again. But Personal Expression Signs about events may not be put up more than sixty days in advance of the event; and unlike commercial signs, they may not be lit up or taller than six feet.

That gets the doctrine backward. Historically, the government has had more leeway to regulate commercial speech than other kinds of speech. Yet this ordinance disfavors *noncommercial* speech, which has never enjoyed less protection. So the Borough cannot rely on the commercial-speech doctrine, and the Personal Expression category faces strict scrutiny.

## B. The ordinance treats holiday signs better than other temporary signs

The Temporary Signs category is itself constitutionally suspect. The ordinance defines a Temporary Sign as a "non-permanent Sign that is located on private property." App. 53. On its face, that definition is content neutral. *Reed*, 576 U.S. at 173. Yet the ordinance goes on to carve out from it a content-based category of non-permanent signs. Holiday Decorations are "signs … that are a non-permanent installation celebrating … holidays." App. 51. To tell if a sign celebrates a holiday, we must consider its content. And unlike other non-permanent signs, residents may put up as many Holiday Decorations as they want.

The Holiday Decorations category discriminates against signs based not only on their content, but also their viewpoint. To get special treatment, a sign must *celebrate* the holiday. Imagine two Veterans Day messages. First, a veteran puts up a sign reading: "Support Our Troops and Veterans." Then a pacifist responds with his own sign: "War Is Not the Answer."

A zoning officer would likely treat the first sign as celebrating the holiday because its message is positive. But he might well treat the second sign's lament differently.

The Holiday Decorations provisions are not challenged in this suit, but they raise constitutional concerns that infect the Temporary Sign category. A Temporary Sign is defined by what it is not—it does not celebrate a holiday. That is a subject-matter distinction, separating out Holiday Decorations as a content-based (and viewpoint-based) subset. And the two categories have different limits on size, number, and duration based on what the sign says. When an ordinance singles out one content-based category for better treatment, the remaining catchall category becomes content based too. *See Reed*, 576 U.S. at 159–60, 169. So by favoring holiday messages, the ordinance lets enforcement officers discriminate based on a sign's subject matter. Like the distinction between commercial and noncommercial messages, the distinction between holiday and nonholiday messages is content based. The Temporary Signs category must also face strict scrutiny.

### III. THE CHALLENGED PROVISIONS FAIL STRICT SCRUTINY

To discriminate based on a message's content, the government needs a compelling reason. Content-based restrictions "have the constant potential to be a repressive force in the lives and thoughts of a free people." *Ashcroft v. ACLU*, 542 U.S. 656, 660 (2004). They cannot stand unless they "further[] a compelling interest and [are] narrowly tailored to achieve that interest." *Reed*, 576 U.S. at 171.

Camp Hill must defend two of its decisions: First, why did it impose a stricter time limit on noncommercial event-based signs than on commercial ones? Second, why did it limit how many temporary signs may express nonholiday messages but not how many may express holiday messages?

To justify these decisions, Camp Hill invokes two interests that it claims compelled it to limit speech: traffic safety and aesthetics. Though both are legitimate interests, we have never held them to be compelling. *See Johnson v. City & County of Philadelphia*, 665 F.3d 486, 491 (3d Cir. 2011).

Even if both interests were compelling, the ordinance would "fail as hopelessly underinclusive." *Reed*, 576 U.S. at 171. Camp Hill bears the burden of proving that the restrictions were tailored both to serve those interests and to curtail speech as little as possible. But it was not tailored to those interests, let alone narrowly tailored. To show that lawn signs are ugly and unsafe, the Borough relies on Pearson and Machiraju's depositions. True, both said they did not like yards overflowing with signs with which they disagreed. And they admitted that older signs had fallen apart or been knocked over by the wind. But their testimony does not prove that the ordinance combated these concerns effectively. *See Fisher v. Univ. of Tex. at Austin*, 570 U.S. 297, 311–12 (2013). And without that evidence, Camp Hill cannot show that it tailored the ordinance to promote traffic safety or preserve aesthetic appeal.

Plus, narrow tailoring requires using the "least restrictive means among available, effective alternatives." *Ashcroft*, 542 U.S. at 666. This ordinance does not. As for aesthetics, Personal Expression Signs are "no greater an eyesore" than

commercial lawn signs. *City of Cincinnati*, 507 U.S. at 425. Camp Hill gives no reason to think that holiday signs are necessarily more attractive. Maybe people prefer inflatable Santas, Frostys, and the like to lawn signs, but Camp Hill failed to show that. And, as written, the favored Holiday Decorations category includes lawn signs with holiday messages. We cannot say that one lawn sign is more aesthetically pleasing than another based on its message. (That approach would build an inappropriate content judgment into narrow tailoring.) Instead, Camp Hill could have applied the same number and time limits to all lawn signs. Its contrived approach is not narrowly tailored to preserve the town's aesthetics.

So too with traffic safety. Like other lawn signs, commercial and holiday signs can fall down and fall apart. They are also as likely, if not more likely, to distract drivers. If anything, Camp Hill's preferential treatment of Holiday Decorations undermines its purported interest in traffic safety. Unchecked, residents filled their front yards with gardens of illuminated Halloween creatures, tree-sized plastic skeletons, and large reindeer. These spooky spirits and skeletons may startle drivers, and Rudolph with his nose so bright may blind them. So this arrangement cannot be the least restrictive way to protect drivers and pedestrians.

Going forward, Camp Hill has constitutional options. It may restrict signs based on time, place, or manner regardless of their content. But without a much stronger showing, it may not treat some speech worse based on its content.

10

\* \* \* \* \*

While trying to preserve aesthetics and promote traffic safety, Camp Hill stitched together a crazy quilt of a sign ordinance. Because it discriminates against some messages, the ordinance is unconstitutional on its face. So we will affirm the District Court's summary judgment for the challengers.